THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT L. DURHAM, Defendant-Appellant.

Third District   No. 3—92—0386

Opinion filed November 19, 1993.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellant.

Erik I. Blanc, State's Attorney, of Pekin (John X. Breslin and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

Defendant Robert Durham was found guilty of burglary and retail theft following a jury trial in the circuit court of Tazewell County and was given an enhanced sentence of 25 years in the penitentiary. On appeal, he asks that both convictions be reversed or, in the alternative, that the cause be remanded for a new trial or a new sentencing hearing. We reverse the burglary conviction, affirm the retail theft conviction, and remand for a resentencing.

On December 12, 1991, at about 1:30 p.m., defendant, who was black, and another black man entered the front door of Witzig's, Inc., a department store in Morton, Illinois. Defendant went to the men's sportswear section where he began to browse through the clothing displayed there while the other man went directly to the men's suit department.

A few minutes later, a customer, Barbara Stinson, parked behind the store, and as she approached the back door, she saw a black man

come out the door carrying several men's suits across his arm on hangers with the the tags attached. Stinson entered the store, saw a black man looking at clothing, and told a clerk what she had seen in the alley. She was not able to identify defendant as either of the men she had seen in Witzig's.

When the clerk went to the back door to see if someone in the receiving department was moving merchandise, she saw an older model white car with a dark green top stop in the alley for a short time and then drive away. She was not able to describe the driver. By then defendant had moved into the suit department near the back door, but when the clerk came back into the store, defendant began to go toward the front of the store. The clerk told Harold Witzig, one of the store owners, that some suits had been taken.

Harold Witzig saw defendant exit through the front door of the store, look both ways, and then begin to walk south on Main Street. Gene Witzig, president of the store, followed defendant to the corner of Adams and Main, where both men stopped, and defendant asked him, "What are you doing?" Gene answered, "I believe we're waiting for the same car." At that, defendant began to run. Gene's nephew, Phil Witzig, who had just arrived at the same corner, ran after defendant. During the chase, which covered several blocks, defendant tripped and fell into a shallow creek, but he got up and continued to run into a residential neighborhood. After defendant ran around a house occupied by Marilyn Tiller, Phil caught up with him. Defendant had taken off his belt and was swinging the end with a large buckle at Phil. A short time later the police took defendant into custody.

All of the witnesses who saw defendant in the store and after he left the store testified that he was not carrying anything. However, he was wearing a loose-fitting waist-length denim jacket which could have concealed something. Nonetheless, those who followed defendant saw no bulges under his jacket. When arrested, defendant's jacket was wet and muddy, and he had no wallet, no cash, no checks, and no credit cards.

The day after the incident, Marilyn Tiller discovered a man's grey suit in the yard of her house. She described the suit as damp and wrinkled and bearing tags from Witzig's store. The suit was identified as a size 42 regular, athletic cut, with a price of $325. After defendant left the store, Harold Witzig checked the suit rack and saw an empty section which had contained size 42 regular athletic cut suits priced between $275 to $475. He estimated that as many as 12 suits were missing.

Another witness for the State was a garbage collector who saw an old white LTD automobile with a black top at the corner of Main and Jefferson in Morton between 1:30 and 2 p.m. He said the car had two black male occupants, one driving and one riding in the back seat.

Defendant was charged by indictment with both burglary and retail theft. After he was found guilty by the jury, the court concluded that defendant's 10 previous felony convictions required imposition of a Class X sentence for the burglary conviction and imposed a 25-year prison term.

First we consider whether the evidence was sufficient to convict defendant of burglary and retail theft. When a defendant challenges the sufficiency of the evidence that resulted in his conviction, the reviewing court will uphold the conviction only if, upon viewing the evidence in a light most favorable to the prosecution, the court finds that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.

■ The burglary indictment alleged that defendant "knowingly and without authority, entered a building of Witzig's Inc., with the intent to commit a theft therein." Section 19—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 19—1) defines burglary as follows:

"(a) A person commits a burglary when without authority he knowingly enters or without authority remains within a building * * *, or any part thereof, with intent to commit therein a felony or theft."

By charging defendant with burglary by illegal entry, the State had the burden of proving that defendant entered Witzig's store without authority and that at the time of entry, he intended to steal. *People v. Boose* (1985), 139 Ill. App. 3d 471, 473, 487 N.E.2d 1088, 1090.

At common law, burglary was defined as breaking and entering the dwelling of another in the nighttime with the intent to commit a felony. The current statutory definition has eliminated "breaking," "dwelling" and "nighttime" as elements of the crime. (See Ill. Ann. Stat. ch. 38, par. 19—1, Committee Comments, at 569 (Smith-Hurd 1977).) Illinois law is well settled that a building open to the public can be the subject of a burglary. Examples include a laundromat (*People v. Weaver* (1968), 41 Ill. 2d 434, 243 N.E.2d 245); museum (*People v. Schneller* (1966), 69 Ill. App. 2d 50, 216 N.E.2d 510); supermarket (*People v. Drake* (1988), 172 Ill. App. 3d 1026, 527 N.E.2d 519; *People v. Stager* (1988), 168 Ill. App. 3d 457, 522 N.E.2d 812; *People ex rel. McLain v. Housewright* (1973), 9 Ill. App. 3d 803, 293 N.E.2d 911);

car wash (*People v. Blair* (1971), 1 Ill. App. 3d 6, 272 N.E.2d 404); and a discount store (*People v. Owens* (1987), 151 Ill. App. 3d 1043, 504 N.E.2d 186).

As all of the "public building" burglary cases make clear, the statute requires an entry which is both without authority and with intent to commit a felony or theft. In the leading case of *People v. Weaver*, the court stated:

> "A criminal intent formulated after a lawful entry will not satisfy the statute. But authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open. [Citation.] An entry with intent to commit a theft cannot be said to be within the authority granted patrons of a laundromat." (41 Ill. 2d at 439, 243 N.E.2d at 248.)

In *Weaver* the defendant had no laundry when he entered the laundromat, but he did have burglary tools and a key that would open the vending machine which was standing open when police arrived. The evidence was held sufficient to establish entry with intent to steal.

Other cases have also found evidence of intent to steal from the fact that the accused carried burglary tools when entering the building while it was open to the public. (*People v. Blair*, 1 Ill. App. 3d 6, 272 N.E.2d 404; *People v. Schneller*, 69 Ill. App. 2d 50, 216 N.E.2d 510.) In *People v. Drake* the defendant entered a grocery store with some stolen checks, one of which he presented to pay for approximately $10 worth of groceries. The check was made out for $310.37. He was convicted of burglary based on his unauthorized entry into the store with the intent to commit a forgery, and the appellate court affirmed. Thus, the fact that the defendant brought the stolen checks with him into the store was sufficient evidence of entry with intent to commit a felony.

In the case before us, defendant carried nothing into the store that would indicate an intent to commit a theft. His conduct in the store, according to the witnesses who saw him, was that of a shopper browsing through various racks and displays of men's clothing. He did not communicate with the man he entered with, and he did nothing to create a diversion which might distract those in charge while his alleged companion took away the suits. There was no evidence of a scheme or plan to steal formulated prior to entry.

Evidence of intent to commit a felony was held to be insufficient in *People v. Boose* (1985), 139 Ill. App. 3d 471, 487 N.E.2d 1088, where the defendant entered Marshall Field's State Street store during the morning while intoxicated. He spent several hours walking

around in the store looking at the Christmas sights and patronizing some restaurants. He remained in the store overnight and was found the next morning sleeping in the store wearing a sweater and jacket on which were attached Marshal Field price tags and sensomatic tags. Boose was charged with burglary by illegal entry and was convicted, but his conviction was reversed for failure of the State to prove that he entered the building with the intent to steal. Quoting an early Illinois case, *People v. Kelley* (1916), 274 Ill. 556, 558, 113 N.E. 926, the court said:

> " 'There is no evidence as to the intent with which the defendant entered the store, unless it is found in his conduct after entering. *** He may have taken advantage of the opportunity to commit larceny, but his presence in the store is as consistent with his innocence as with his guilt of the criminal intent at the time of his entry.' " *Boose*, 139 Ill. App. 3d at 474, 487 N.E.2d at 1091.

Another case where a burglary conviction was reversed for lack of sufficient evidence of entry with intent to steal is *People v. Perruquet* (1988), 173 Ill. App. 3d 1054, 527 N.E.2d 1334, where two men entered a used furniture store to purchase an air conditioner. They paid with cash and subsequently were accused of taking $40 from the purse of a store employee during the course of the transaction. In reversing the burglary conviction, the court held that the State failed to prove beyond a reasonable doubt that they had the requisite intent at the time they entered the store.

If defendant did steal the suit found in Tiller's yard, there was no evidence to show that he was carrying out some previously devised plan rather than taking advantage of an opportunity presented by the circumstances. Therefore, the State's evidence was insufficient to prove beyond a reasonable doubt that defendant entered the store with the intent to commit a theft. Accordingly, we hold that the burglary conviction must be reversed and his 25-year sentence vacated.

Defendant also contends that the State wrongly prosecuted a retail theft as a burglary since he had authority to enter a retail store open to the general public. He argues that the legislature created the crime of retail theft specifically to cover the crime of shoplifting and did not intend shoplifting to be prosecuted as a burglary. However, since we have reversed the burglary conviction on other grounds, we need not rule on the propriety of the charge itself.

Defendant next asserts that the evidence was insufficient to prove him guilty of retail theft beyond a reasonable doubt. In section 16A—3

of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 16A–3), the offense of retail theft is defined in part as follows:

"A person commits the offense of retail theft when he or she knowingly:

(a) Takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale in a retail mercantile establishment with the intention of retaining such merchandise or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise without paying the full retail value of such merchandise."

The key element of retail theft is the taking possession of merchandise in a retail store with the intention of not paying full value.

Defendant argues that, since he was never seen with any merchandise and did not communicate with the man he entered with, there was no basis for the State's accusation that he took the suit which was found in Tiller's yard later.

■ We believe the jury could have found that defendant committed retail theft by taking the suit that was later found at Tiller's residence. Defendant's flight from the store may be a circumstance tending to show consciousness of guilt. (*People v. Jimerson* (1989), 127 Ill. 2d 12, 45, 535 N.E.2d 889, 904.) Witnesses said that defendant could have concealed a suit inside his jacket. In reviewing the sufficiency of the evidence in a criminal case, whether the evidence is direct or circumstantial, the test is whether, upon viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344, 346.

Looking at the evidence in the light most favorable to the prosecution, the jury could have drawn reasonable inferences of guilt from the fact that defendant wore a loose-fitting jacket capable of concealing stolen apparel, that defendant began to run when he realized Gene Witzig was following him, that a damp and wrinkled suit taken from the store was found in an area where defendant had been, and that defendant was out of Phil Witzig's sight when he ran around the Tiller home. We therefore hold the jury could have found that the State proved defendant guilty of retail theft beyond a reasonable doubt.

Among the other errors asserted by defendant are several matters in the State's closing argument, including alleged misstatements of evidence and law, references to other crimes committed by defend-

ant even though defendant did not testify, and remarks tending to inflame the jury and pander to prejudice. However, all closing argument errors were waived by defendant's failure to object at trial or in his post-trial motion. *People v. Morgan* (1991), 142 Ill. 2d 410, 446, 568 N.E.2d 755, 771.

Defendant claims that each of these alleged errors amounted to plain error and, in the alternative, that the failure to object during closing argument was ineffective assistance of counsel. We have carefully examined the entire closing argument, and we conclude that none of the errors claimed by defendant rise to the level of plain error and that the failure to object was not ineffective assistance of counsel. Furthermore, any prejudice from misstatements about evidence made during argument tends to be cured by the instruction to the jurors that opening and closing arguments are not evidence and that any comment during argument that is not based upon the evidence should be disregarded. *People v. Garcia* (1992), 231 Ill. App. 3d 460, 472, 596 N.E.2d 1308, 1317.

Two of the prosecutor's statements deserve mention, however. First, defendant was referred to as a "professional" and the theft as a "professional job," thus implying that defendant may have committed previous crimes. The trial court had denied defendant's motion *in limine* to exclude his prior convictions, and as a result, defendant elected not to testify in his own behalf. Thus, defendant's prior criminal record was not in evidence, and closing argument statements characterizing defendant as a professional thief were not based on evidence and were not proper.

In seeking a reversal under the plain error rule, defendant relies upon two cases, both of which are distinguishable from the case at bar. In *People v. Whitlow* (1982), 89 Ill. 2d 322, 433 N.E.2d 629, the prosecutor not only made closing argument statements suggesting that the defendants had previously engaged in illegal conduct but also made a large number of other improper comments, all of which the court took into account in ruling that the cumulative impact of those statements may have prejudiced the jury and thus amounted to reversible error.

In the second case cited by defendant, *People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880, the prosecutor repeatedly argued that the defendant was an habitual criminal who had not been caught before because he was too smart. The defendant had no prior record. Although the trial court sustained objections to those comments, the supreme court ruled that these were not inadvertent errors and were severely prejudicial.

■ Such is not the case here where the prosecution's improper statements implying that defendant had prior criminal experience, considered in the context of the entire argument, were not so prejudicial or inflammatory as to amount to plain error.

■ The prosecutor also made references to defendant's race, stating that the only reason black persons would go to a store in a small white community was because security would be more lax and it would be easier to steal merchandise there. However, that argument was made after defense counsel argued at length that the jury should not "draw an inference based on race" and assume that black individuals going into a store in a white community were acting in concert. The prosecutor's response was clearly invited by defendant's argument and was not improper. See *People v. Howard* (1991), 147 Ill. 2d 103, 149, 588 N.E.2d 1044, 1063.

Defendant also contends that the trial court erred in giving a non-Illinois Pattern Jury Instruction concerning burglary and in imposing an enhanced sentence for the burglary conviction. Since we are reversing the burglary conviction, we need not consider these issues.

For the reasons stated, we affirm defendant's retail theft conviction, reverse the burglary conviction, and remand for resentencing.

Affirmed in part; reversed in part and remanded.

McCUSKEY, P.J., and STOUDER, J., concur.