# Illinois Official Reports

## Appellate Court

---

### *People v. Moore*, 2018 IL App (2d) 160277

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMISON L. MOORE, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0277 |
| Filed | June 6, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Boone County, No. 15-CF-173; the Hon. C. Robert Tobin III, Judge, presiding. |
| Judgment | Affirmed as modified. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Paul J. Glaser, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Tricia L. Smith, State's Attorney, of Belvidere (Patrick Delfino, Lawrence M. Bauer, and Steven A. Rodgers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Presiding Justice Hudson and Justice Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a jury trial, defendant, Jamison L. Moore, was convicted of burglary (720 ILCS 5/19-1(a) (West 2014)) and retail theft (*id.* § 16-25(a)(1)). The trial court sentenced him to concurrent prison terms of 10 years for burglary and a 6-year extended term for retail theft. He appeals, contending that (1) he was not proved guilty beyond a reasonable doubt of burglary where he entered a Walmart store during regular business hours and remained in publicly accessible areas of the store; (2) the State failed to prove that he intended to commit a theft when he entered the store or that he was accountable for the conduct of his cousin, Adrian Moore, who stole merchandise from the store; and (3) if we affirm both convictions, we must vacate the extended-term sentence for retail theft. We agree only with defendant's final contention. Thus, we vacate the extended-term portion of the retail-theft sentence but affirm in all other respects.

¶ 2 **I. BACKGROUND**

¶ 3 On August 7, 2015, Michael Eby took a break from his job as a manager at the Belvidere Walmart to go outside for a cigarette. As he left the store, two men, later identified as Adrian and defendant, caught his attention. Adrian was carrying a diaper bag although neither man had a baby with him. Eby watched the men enter the store. He went to check on them and found them in the liquor department. Adrian left the store alone, carrying the diaper bag with liquor bottles in it. He walked past the cash registers without paying for the liquor.

¶ 4 Eby followed Adrian to the parking lot, where he got in a black sport-utility vehicle (SUV) being driven by a black woman. Eby yelled at two employees in the parking lot to get the vehicle's license number while he called 911. The SUV backed up and left the parking lot rapidly. Eby saw defendant leave the store a short time later. Defendant walked by Eby, then headed back toward the store before running to the road and out of sight.

¶ 5 Eby went back to the store to pull up the surveillance video. He saw that four bottles of liquor had been taken.

¶ 6 According to Eby, the video showed that Adrian followed defendant into the liquor department. Defendant then returned to the department's entrance and remained there for a few seconds. When another couple approached the department, defendant walked away. He walked past the self-check registers and remained on the sales floor for about 30 seconds.

¶ 7 Eby later viewed other portions of the video. One such portion showed defendant and Adrian being dropped off just outside the store entrance, then entering the store together. Once they entered the liquor department, the two men made eye contact but, as the video had no sound, Eby could not tell what if anything was said. The video showed Adrian immediately take four bottles of vodka from the top shelf, put them in the bag, and leave. Defendant, meanwhile, walked toward the service desk, turned a corner, looked at an ATM, then turned and left the store by the same door through which they entered.

¶ 8 Belvidere police officer Richard Zapf apprehended defendant at the corner of Genoa Road and Chrysler Drive, near the Walmart, at around 7 p.m. Defendant was sweating, breathing heavily, and nervous. He said that he had walked to the Walmart to do some shopping.

¶ 9 Officer Michele Bogdanas arrived. She handcuffed defendant and returned him to the front of the Walmart. Defendant's wallet contained a few cards, but no cash. According to

Bogdanas, the license number of the SUV that drove away from the store was registered to Tannah Moore, defendant's wife.

¶ 10 Officer Todd Moore also responded to the scene. Defendant told Officer Moore that he walked to the store to get some snacks but forgot his wallet at home. He initially said that he went to the store alone. When asked who the "other guy" was, he said that his name was James.

¶ 11 Defendant later told police that he went to the store with a cousin but did not want to give the cousin's name. The next day, after receiving a call from defendant's wife, Officer Moore spoke with defendant at the county jail. Defendant said that his cousin's name was Adrian Moore. He showed Adrian where the liquor section was because Adrian had never been in that Walmart before. Defendant said that he then went to buy snacks and did not know what Adrian was doing.

¶ 12 The jury found defendant guilty of burglary and retail theft. The trial court sentenced him to 10 years' imprisonment for burglary with a concurrent 6-year, extended-term sentence for retail theft. The court denied defendant's posttrial motion and motion to reconsider the sentence. Defendant timely appeals.

¶ 13 II. ANALYSIS

¶ 14 A. Without Authority

¶ 15 Defendant argues first that the State failed to prove beyond a reasonable doubt that he entered the Walmart store "without authority." 720 ILCS 5/19-1(a) (West 2014). He maintains that he never exceeded the scope of his authority to be in the store, given that he entered during regular business hours, never entered an area of the store that was off-limits to the public, and left while the store was still open. For the following reasons, we follow long-standing authority and reject defendant's argument.

¶ 16 Although defendant frames the issue as a challenge to the sufficiency of the evidence, he acknowledges that the real question is the construction of the burglary statute. The construction of a statute is an issue of law, which we review *de novo*. *Hall v. Henn*, 208 Ill. 2d 325, 330 (2003).

¶ 17 Section 19-1(a) of the Criminal Code of 2012 provides, in part, that "[a] person commits burglary when without authority he or she knowingly enters or without authority remains within a building, *** or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2014). Thus, under the statute, one can commit a burglary in one of two ways: (1) by entering without authority and with the intent to commit a felony or theft or (2) by remaining without authority and with the intent to commit a felony or theft. *Id.* Defendant was charged with, and convicted of, the first type of burglary—burglary by unauthorized entry.

¶ 18 For more than 100 years, the supreme court has recognized that entering a retail establishment with the intention of committing a theft constitutes burglary. See *People v. Kelley*, 274 Ill. 556, 558 (1916) (reversing burglary conviction only because there was no evidence of the defendant's intent when he entered the store). In *People v. Weaver*, 41 Ill. 2d 434, 435 (1968), the defendant was spotted inside a laundromat, standing near a vending machine, the door of which was open. Police found keys to the vending machine inside vehicles belonging to the defendant and his codefendant, as well as more than $50 in coins in the defendant's pocket. *Id.* at 435-36. The defendant was convicted of burglary, possession of burglary tools, and theft. *Id.* at 435. The defendant appealed to the supreme court, arguing that

he was not proved guilty of burglary, given that the laundromat was open to the public. The court rejected the defendant's argument, holding that evidence that the defendant entered a place of business in order to commit a theft is sufficient to satisfy the "without authority" element of burglary by unauthorized entry. *Id.* at 438-39. The court explained that the "authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open." *Id.* at 439. Thus, patrons of a business lack the authority to enter if they intend to commit a theft inside the establishment. *Id.* Consequently, evidence that the defendant entered the building intending to steal from the vending machine was sufficient to convict him of burglary by unauthorized entry. *Id.*

¶ 19    Subsequently, numerous decisions have applied *Weaver* to cases of burglary involving the unauthorized entry of a retail establishment. See, *e.g.*, *People v. Rudd*, 2012 IL App (5th) 100528, ¶¶ 13-14; *People v. Durham*, 252 Ill. App. 3d 88, 91 (1993); *People v. Stager*, 168 Ill. App. 3d 457, 459 (1988); *People v. Patterson*, 1 Ill. App. 3d 724, 726 (1971).

¶ 20    Defendant relies on *People v. Bradford*, 2016 IL 118674, ¶¶ 25, 31, where the supreme court declined to extend *Weaver* to a case of burglary by unlawfully remaining. There, the defendant was convicted of burglary by unlawfully remaining in a Walmart store with the intent to commit a theft. In the supreme court, the defendant argued that he never exceeded the scope of his authority to be in the store and that burglary by remaining was never intended to apply to such a situation, which amounted to no more than ordinary shoplifting. The State contended that the burglary statute could also apply where a defendant entered a store lawfully, then subsequently formed the intent to commit a theft, but remained in the store longer than necessary to steal the items.

¶ 21    The supreme court, however, agreed that the defendant's was the "only reasonable reading of the burglary statute." *Id.* ¶ 25. The court held that the State's proposed test (1) was unworkable (due to the difficulty of proving precisely when the defendant's authority to be in the store was revoked and whether he "remained" in the store for some period of time after completing the theft), (2) could lead to absurd results (by arbitrarily distinguishing between a defendant who steals one item and leaves immediately thereafter and one who steals more than one item or lingers in the store before leaving), and (3) was not consistent with the retail-theft statute (which was enacted 14 years after the burglary statute's "remaining within" provision and would be effectively negated by the State's reading) and the historical development of the burglary statute (which reflected that the addition of the "remaining within" provision incorporated the former crime of "burglar found in building" and where the term "found" necessarily refers to an area closed to the defendant or the public). *Id.* ¶¶ 25-30. In sum, the court held that a defendant "commits burglary by remaining in a public place only where he exceeds his physical authority to be on the premises." *Id.* ¶ 31. This includes situations where the defendant "enters a public building lawfully but, in order to commit a theft or felony, (1) hides and waits for the building to close," "(2) enters unauthorized areas within the building," "or (3) continues to remain on the premises after his authority is explicitly revoked." *Id.* However, the court clarified that a person who lawfully enters a building, shoplifts within areas open to the public, and then leaves during business hours is guilty of retail theft. *Id.*

¶ 22    Defendant contends that *Bradford*'s rationale should also apply to cases of burglary by unauthorized entry. We disagree. *Bradford* addressed only the second type of burglary: burglary by remaining. The supreme court's concerns about establishing when authority is

- 4 -

revoked and when a defendant has remained in the store longer than necessary to complete the theft are simply not present in a case like this one. Further, as noted, the historical development of the crime of burglary by remaining, the court emphasized, includes only scenarios where the defendant is discovered in a place where he or she is not authorized to be. *Id.* ¶ 30. Finally, nothing in *Bradford* purports to overrule *Weaver*, where the court held that the burglary statute applied to the entry of an establishment otherwise open to the public (*Weaver*, 41 Ill. 2d at 438-39).

¶ 23 We find support for our conclusion in the Fourth District's decision in *People v. Burlington*, 2018 IL App (4th) 150642, which the State urges us to follow. There, the court followed longstanding precedent (most significantly, *Weaver*) and affirmed the defendant's burglary conviction after he entered a Menard's store with the intent to commit a theft. *Id.* ¶ 31. *Burlington* observed that *Bradford* did not affect the holding of *Weaver* and its progeny. *Id.* ¶ 27. The court further noted that, even after the passage of the retail-theft statute, the supreme court had held that burglary and retail theft constituted separate offenses (*id.* ¶ 28 (citing *People v. Miller*, 238 Ill. 2d 161, 176 (2010))), thus "undermining the assertion the first type of burglary eviscerates the retail theft statute." *Id.* The Fourth District noted that the defendant's assertion that the intent to commit a theft does not remove one's authority to enter a retail establishment would eliminate other types of burglary, such as when one enters an establishment intending to commit forgery. *Id.* ¶ 29 (citing *People v. Drake*, 172 Ill. App. 3d 1026, 1028 (1988)). Finally, the court noted that, in the 50 years since *Weaver* was announced, the legislature has never amended the burglary statute to eliminate its application to cases of that type. *Id.* ¶ 30.

¶ 24 We agree with *Burlington* that the history and nature of the burglary-by-remaining provision distinguish it from burglary by unauthorized entry such that *Bradford*'s rationale cannot be mechanically applied to the latter provision. The distinction is further justified by the fact that one who enters a store with a preconceived plan to steal merchandise is at least arguably more culpable than one who, once inside a store, impulsively takes merchandise. See *Durham*, 252 Ill. App. 3d at 93 (no evidence that the defendant "was carrying out some previously devised plan rather than taking advantage of an opportunity presented by the circumstances").

¶ 25 In *People v. Johnson*, 2018 IL App (3d) 150352, ¶ 35, a case upon which defendant relies, the Third District came to a different conclusion than the Fourth District in *Burlington*. In *Johnson*, the Third District held that *Bradford* changed longstanding law and applies to cases of burglary by unauthorized entry. *Id.* The court concluded that "*Bradford*'s physical authority test applies to all retail theft cases, regardless of when the defendant forms the intent to shoplift." *Id.*

¶ 26 We disagree with and do not follow *Johnson*. The court's primary concern there appears to have been that allowing the same act to be charged as either burglary or retail theft (or both) gives prosecutors "unbridled discretion." *Id.* ¶ 30. We, however, do not find that limiting a prosecutor's discretion to charge a defendant when his or her conduct falls under one or more provisions is a basis to depart from more than 100 years of precedent. The state's attorney has the responsibility of evaluating evidence and other pertinent factors and determining what, if any, offense should be charged. *People v. Williams*, 147 Ill. 2d 173, 256 (1991) (citing *People v. Rhodes*, 38 Ill. 2d 389, 396 (1967)). Thus, the prosecutor is vested with wide discretion in enforcing the criminal laws. *Id.* (citing *Marcisz v. Marcisz*, 65 Ill. 2d 206, 210 (1976)). Further,

as the *Burlington* court noted, "[c]oncerns over the exercise of prosecutorial discretion cannot alter the plain language of a statute." *Burlington*, 2018 IL App (4th) 150642, ¶ 32.

¶ 27    *Johnson* also seemed to express concern that allowing shoplifting to be charged as unauthorized-entry burglary would effectively nullify the retail-theft statute: "We suspect that it is a miniscule percentage of shoplifters who form the intent to steal only after entering a store." *Johnson*, 2018 IL App (3d) 150352, ¶ 33. The court cited no authority for its "suspicion." Further, it missed the point: unlawful-entry burglary requires the concurrent intent to commit a theft or felony. Given the difficulty of proving a defendant's intent at the moment he or she enters a store, it is more probable that the vast majority of cases are charged as retail theft (because the State has insufficient evidence of intent at entry). See *Kelley*, 274 Ill. at 558; *Durham*, 252 Ill. App. 3d at 93; *People v. Boose*, 139 Ill. App. 3d 471, 474 (1985) (burglary convictions reversed due to lack of evidence of the defendants' intent upon entering). In any event, these are policy arguments best directed to the legislature. Thus, we follow *Burlington*.

¶ 28                              B. Intent and Accountability

¶ 29    Defendant next contends that the evidence was insufficient to prove that he entered the store intending to commit a theft or that he was accountable for Adrian's conduct after they entered the store. Defendant discusses this issue primarily as it relates to his burglary conviction, but he also asks us to reverse his retail-theft conviction. Entering without authority is not an element of retail theft. See 720 ILCS 5/16-25(a) (West 2014). However, to establish guilt of retail theft, the State had to prove that defendant was accountable for Adrian's conduct (because there was no evidence that defendant personally stole anything from the Walmart). For the following reasons, we conclude that the evidence was sufficient to prove that defendant entered the store intending to commit a theft and that he was accountable for Adrian's conduct after they entered the premises.

¶ 30    When reviewing the sufficiency of the evidence, we ask only whether any rational trier of fact could have found the elements of the offense, when viewing the evidence in the light most favorable to the prosecution. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). It is the trier of fact's function to judge the witnesses' credibility, resolve conflicts in the evidence, and draw conclusions based on all the evidence. *People v. Titone*, 115 Ill. 2d 413, 422 (1986). To prove that a defendant was accountable for another's criminal conduct, the State must establish that the defendant (1) solicited, ordered, abetted, or agreed or attempted to aid another in the planning or commission of the offense; (2) participated before or during the commission of the offense; and (3) had the concurrent, specific intent to promote or facilitate the commission of the offense. 720 ILCS 5/5-2(c) (West 2014); *People v. Jaimes*, 2014 IL App (2d) 121368, ¶ 37. "To prove intent, the State must present evidence that the defendant shared the criminal intent of the principal or that there was a common criminal design." *Jaimes*, 2014 IL App (2d) 121368, ¶ 37.

¶ 31    Here, Eby observed defendant and Adrian enter the store together. Video confirms that they were dropped off together and entered the store almost simultaneously. Video shows that Adrian, who was inexplicably carrying a diaper bag, entered the liquor department. Defendant entered seconds later, and the two briefly conversed or at least made eye contact. Defendant then left the area and embarked on a circuitous journey around the front of the store. At no time was he seen examining merchandise as if shopping, and except for a brief foray through the

women's-wear department, he never entered another area of the store containing merchandise. From this, the jury could reasonably infer that defendant served as a lookout while Adrian stuffed the diaper bag with liquor. Defendant's conduct was not "that of a shopper browsing through various racks and displays." *Durham*, 252 Ill. App. 3d at 92.

¶ 32    Moreover, defendant ran after leaving the store. When apprehended a short time later, he appeared sweaty, out of breath, and nervous. He gave the investigating officers conflicting stories. His flight and false exculpatory stories could both be viewed as evidence of consciousness of guilt. See *People v. Harris*, 52 Ill. 2d 558, 561 (1972) (evidence of flight admissible as tending to show consciousness of guilt); *People v. McQueen*, 115 Ill. App. 3d 833, 837 (1983) (false exculpatory statement admissible to establish consciousness of guilt).

¶ 33    Thus, the evidence was sufficient to prove that defendant and Adrian entered the store intending to commit a theft and, moreover, that defendant was accountable for Adrian's conduct after they entered the premises. We affirm defendant's convictions.

¶ 34                              C. Extended-Term Sentence

¶ 35    Defendant's final contention is that his extended-term sentence for retail theft is unauthorized. The State confesses error.

¶ 36    Extended-term sentences may be imposed only for offenses within the most serious class of offense of which a defendant is convicted. 730 ILCS 5/5-8-2(a) (West 2014); *People v. Jordan*, 103 Ill. 2d 192, 207 (1984). Defendant was convicted of burglary, a Class 2 felony (720 ILCS 5/19-1(b) (West 2014)), and retail theft, a Class 4 felony as charged here (*id.* § 16-25(f)(1)). Thus, as the State concedes, defendant could not receive an extended-term sentence for retail theft. Accordingly, we reduce defendant's sentence for retail theft to three years' imprisonment, the maximum nonextended term for a Class 4 felony. 730 ILCS 5/5-4.5-45(a) (West 2014).

¶ 37                              III. CONCLUSION

¶ 38    The judgment of the circuit court of Boone County is affirmed as modified. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 39    Affirmed as modified.