2020 IL App (2d) 180559-U
No. 2-18-0559
Order filed August 24, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-845 |
| KELLEN L. McMILLER, | ) ) | Honorable Liam C. Brennan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant was properly convicted of burglary premised on his intent to commit a theft where (1) defendant and his companions entered a retail store and indiscriminately filled shopping bags with men's clothing before abruptly leaving without the merchandise; and (2) defendant, together with at least one of the same companions, exhibited similar behavior several hours earlier at another retail store, where the companion shoplifted the merchandise that he and defendant gathered.

¶ 2    Defendant, Kellen L. McMiller, was charged with burglary (720 ILCS 5/19-1(a) (West 2016)) following an incident at a TJ Maxx store. Following a bench trial, the trial court found him guilty and sentenced him to 30 months' probation. Defendant appeals, contending that the State

failed to prove beyond a reasonable doubt that he entered the store with the intent to commit a theft. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        At trial, Gary Vanek testified that he was a loss prevention detective at TJ Maxx. On April 27, 2017, he was working at the Oak Brook store. Around 6:15 p.m., via video monitor, he saw three men enter the store and take two shopping carts and a few shopping bags. Two other men entered shortly thereafter. One was later identified as defendant. All five men went to the men's department and began filling the bags with T-shirts and underwear. Defendant spent 10 to 11 minutes filling shopping bags with T-shirts and underwear, without apparent regard to size or price.

¶ 5        One of the men, wearing a red shirt and apparently talking on a cell phone, left the store. Shortly thereafter, the other four men abruptly left without their merchandise. Vanek later retrieved the bags and generated a receipt for the merchandise, which had a value of $2700.

¶ 6        Oak Brook officer Erica Huff was dispatched to investigate a possible retail theft in progress at TJ Maxx. As she arrived, she saw a man in a red shirt, identified only as "Love," leave the store and get in a gray Nissan Ultima. Huff stopped the Ultima after it left the parking lot. Inside were multiple packages of men's underwear and two Marshalls bags containing numerous items.

¶ 7        Lisa Waznis, a loss prevention investigator, testified that, on April 27, 2017, she investigated a suspected retail theft at Marshalls in Countryside. She looked at videos of an incident that occurred around 1 p.m. In the video, five men entered the store, took either a shopping cart or shopping bags, and proceeded to the men's department. She identified one of the men as defendant. Another of the men was Love, who was wearing a red shirt. The men took merchandise

and placed it into reusable shopping bags. Defendant selected merchandise off the shelves without regard to size or price. In leaving the store, Love lifted the bags, which is a common technique used by shoplifters to avoid detection of electronic article monitoring.

¶ 8    Around 7 p.m. that day, Waznis spoke to Vanek. He gave her a list of items apparently taken from the Marshalls store in Countryside. She identified defendant in a still shot as one of the people leaving the Marshalls store. He was carrying a reusable Marshalls bag.

¶ 9    The court found defendant guilty of burglary, specifically concluding that he entered TJ Maxx with the intent to commit a theft. The court sentenced defendant to 30 months' probation and defendant timely appeals.

¶ 10                                   II. ANALYSIS

¶ 11    Defendant contends that the State failed to prove beyond a reasonable doubt that he entered TJ Maxx with the intent to commit a theft, which it had to do to support a conviction of burglary. Where a defendant challenges on appeal the sufficiency of the evidence, the relevant question is whether, after viewing all the evidence in a light most favorable to the prosecution, a rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. *People v. Collins*, 214 Ill. 2d 206, 217 (2005). We may not substitute our judgment for that of the trier of fact on questions involving the weight of the evidence, the credibility of the witnesses, or the resolution of conflicting testimony. *People v. Campbell*, 146 Ill. 2d 363, 375 (1992).

¶ 12    Section 19-1(a) of the Criminal Code of 2012 provides, in part, that "[a] person commits burglary when without authority he or she knowingly enters or without authority remains within a building, *** or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2014). Thus, under the statute, one can commit a burglary in one of two ways: (1) by

entering without authority and with the intent to commit a felony or theft or (2) by remaining without authority and with the intent to commit a felony or theft. *Id.*

¶ 13    Defendant contends that his actions in entering the store and placing merchandise in a shopping bag sold at the store were consistent with those of an ordinary shopper and, moreover, he never attempted to leave the store with any merchandise. However, from Vanek's testimony, the court could reasonably infer that defendant entered TJ Maxx with another man and joined three others in the store. With no apparent conversation between them, they began placing numerous items of the same type into shopping bags and carts without apparently considering the size or price of each particular item. All five men took men's t-shirts and underwear worth more than $2700. Then, after Love received a phone call, all the men abruptly left the store without attempting to purchase any of the merchandise. The five men proceeding immediately to the same department and taking a large volume of similar merchandise is evidence of a preconceived plan. There is no evidence that defendant and the others conversed and formulated the plan to steal merchandise after they entered the store. The trial court could thus reasonably conclude that a person buying clothing for himself or another would not shop that way, so that the only reasonable explanation for defendant entering the store was to steal.

¶ 14    Defendant's intent was further established by evidence that he participated with Love in a similar crime hours earlier at a nearby store. Waznis testified that defendant, Love, and three other men entered Marshalls and placed packages of men's underwear into shopping bags without checking the size or price of any of the items. In leaving the store, Love raised the bags to avoid detection, which Waznis testified is a technique commonly used by shoplifters. Later, Huff found merchandise from Marshalls in Love's car. Evidence that defendant participated with the same

companion in a nearly identical theft hours earlier at another store further proves his intent to steal when he entered TJ Maxx.

¶ 15    *People v. Moore*, 2018 IL App (2d) 160277, is similar to this case.  There, the defendant and a codefendant entered a Walmart.  The codefendant had a diaper bag although neither man had a baby with him.  The two proceeded to the liquor department and briefly made eye contact.  The codefendant began filling the diaper bag with liquor while the defendant took a circuitous route around the store, apparently acting as a lookout.  We affirmed the defendant's conviction of burglary.  We held that the jury could reasonably have inferred that the defendant's conduct "was not 'that of a shopper browsing through various racks and displays.' "  *Id.* ¶ 31 (quoting *People v. Durham*, 252 Ill. App. 3d 88, 92 (1993)).  Here, as in *Moore*, the men entered the store together.  Also like in *Moore*, apparently random merchandise was stuffed into bags.  In neither case did the men peruse items in the store as if shopping.

¶ 16    In *People v. Rudd*, 2012 IL App (5th) 100528, the defendant and the codefendant entered a Walmart, proceeded to the vacuum cleaner aisle and placed identical appliances in their carts.  The codefendant paid for his vacuums, returned to the store and handed the receipt to the defendant, who attempted to leave the store with the vacuum cleaners and a receipt for identical merchandise.  *Id.* ¶ 15.  The court found that the "idea that the two men decided on this carefully orchestrated plan spontaneously after entering the store is simply not plausible."  *Id.*

¶ 17    Here, too, the evidence showed a carefully orchestrated plan, not merely a convergence of random shoppers or an impulsive theft.  Defendant insists this case is more like *Durham*, in which the court reversed the defendant's burglary conviction.  There, the defendant and another man entered a clothing store, where defendant began to browse.  The defendant left through the front door.  No one saw him carrying anything but, when confronted by a store employee, he began to

run.  Later, a neighborhood resident found a men's suit in her yard, in the area where the defendant had run.  252 Ill. App. 3d at 90.  The court reversed the defendant's burglary conviction, as there was no evidence that the defendant carried anything into the store showing his intent to commit a theft and his conduct within the store was that of an ordinary shopper.  *Id.* at 92.  As noted above, defendant's conduct was not that of an ordinary shopper, and evidence of the earlier theft further dispelled any notion of an innocent explanation for defendant's presence in the store.  Thus, the trial court reasonably concluded that he entered the store intending to commit a theft.

¶ 18                                III. CONCLUSION

¶ 19      The judgment of the circuit court of Du Page County is affirmed.

¶ 20      Affirmed.