# Illinois Official Reports

## Supreme Court

***People v. Johnson*, 2019 IL 123318**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DARREN JOHNSON, Appellee. |
| Docket No. | 123318 |
| Filed<br>Rehearing denied | August 1, 2019<br>September 23, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Whiteside County, the Hon. John Hauptman, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed.<br>Cause remanded with directions. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Eric M. Levin, Assistant Attorneys General, of Chicago, of counsel), for the People.<br><br>James E. Chadd, State Appellate Defender, Patricia Mysza, Deputy Defender, and Gilbert C. Lenz, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Kilbride, Garman, and Burke concurred in the judgment and opinion.

Justice Theis dissented, with opinion, joined by Justice Neville.

Justices Theis and Neville dissented upon denial of rehearing, without opinion.

**OPINION**

¶ 1        Following a November 2014 jury trial in the Whiteside County circuit court, the defendant, Darren Johnson, was convicted of burglary and sentenced to eight years in prison. The appellate court reversed defendant's conviction on appeal. As a matter of law, it held that the facts did not support the conviction because defendant entered the premises of the store where the alleged crime occurred during business hours and therefore his entry was not "without authority" within the meaning of the burglary statute. We allowed the State's petition for leave to appeal. For the reasons that follow, we reverse the judgment of the appellate court and remand the cause to that court for consideration of the remaining issues that were not reached.

¶ 2                                    BACKGROUND

¶ 3        Defendant was charged by information with one count of burglary (720 ILCS 5/19-1(a) (West 2014)) and one count of retail theft (*id.* § 16-25(a)(1)). The burglary count alleged that on July 22, 2014, defendant, "without authority, knowingly entered a building of Wal-Mart, located at 1901 1st Avenue, Rock Falls, Whiteside County, Illinois, with the intent to commit therein a theft." The retail theft count alleged that defendant stole from Walmart various items of merchandise with a total value of less than $300.

¶ 4        The evidence presented at trial, including eyewitness testimony and video surveillance footage, showed that defendant and an accomplice entered the Walmart's vestibule area, placed two backpacks on top of a coin-exchange machine, and then entered the store. Inside, a customer observed the two men walking around with what looked like clothes in their hands and "veer[ing] off" when approached. Eventually, the two men returned to the vestibule area separately, each retrieving one of the backpacks from the top of the coin-exchange machine. They then met near some vending machines outside the building. The customer, who was by this time in the parking lot, saw defendant keeping a lookout as the other man removed items from his shirt and pants and stuffed them into one of the backpacks.

¶ 5        As the customer called the police, defendant and the other man returned to the vestibule, again placed their backpacks on top of the coin-exchange machine, and then reentered the store. Defendant later returned to the vestibule area alone, retrieved one of the backpacks from the coin-exchange machine, and exited the store. By this time, three police officers had arrived. Two of the officers observed defendant exit the store after retrieving the backpack, and they followed him on foot. The third officer pulled his car alongside defendant and got out to talk to him. The officer asked defendant if he had stolen items from Walmart, and defendant

admitted that he had. The officers then escorted defendant to the store manager's office, where defendant removed from his backpack or person 14 purchasable items of girl's clothing with a total retail value of $76.91. Defendant stated that he had taken the items to give to his daughter.

¶ 6 The trial judge instructed the jury on the elements of burglary and retail theft. Those instructions included an explanation that a person "commits the offense of burglary when he, without authority, knowingly enters a building with the intent to commit therein the offense of theft." The jury was also given Illinois Pattern Jury Instruction, Criminal, No. 14.07A (4th ed. 2000), which states as follows with respect to the limited authority a person has to enter a building:

> "The defendant's entry into a building is 'without authority' if, at the time of entry, the defendant has an intent to commit a criminal act within the building regardless of whether the defendant was initially invited in or received consent to enter.
>
> However, the defendant's entry into the building is 'with authority' if the defendant enters without criminal intent and was initially invited in or received consent to enter, regardless of what the defendant does after he enters."

The instruction is consistent with this court's holding in *People v. Weaver*, 41 Ill. 2d 434 (1968), which set forth the limited authority a person has to enter a business building or other building open to the public. In *Weaver*, this court held, in the context of a charge brought under the same version of the burglary statute at issue in the present case, that "authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open." *Id.* at 439. The court further stated that "[a]n entry with intent to commit a theft cannot be said to be within the authority granted patrons." *Id.*

¶ 7 The jury returned verdicts finding defendant guilty of burglary and not guilty of retail theft. At sentencing, it was determined that burglary is generally a Class 2 felony with a sentencing range of 3 to 7 years (720 ILCS 5/19-1(b) (West 2014); 730 ILCS 5/5-4.5-35(a) (West 2014)), but defendant was subject to a Class X sentencing range of 6 to 30 years due to his criminal history (730 ILCS 5/5-4.5-95(b) (West 2014); *id.* § 5-4.5-25(a)). Defendant's lengthy criminal history included three separate convictions for robbery in 1987, burglary in 1992, separate theft and burglary convictions in 1994, resisting a peace officer in 1998, residential burglary in 1999, possession of cannabis in 2006, a conviction in 2007 for altering a lottery ticket for which he was sentenced to five years in prison in Iowa, convictions for assault and resisting a peace officer in 2009, and another resisting a peace officer conviction in 2012. The prosecutor noted that by his calculations defendant had been sentenced to 36 years in prison in all since 1987, yet he was only 44 years old at the time of sentencing in the present case. The prosecutor argued that defendant had never led a law-abiding life and that he continually commits offenses when he is released from the Department of Corrections. The State therefore recommended a 15-year, extended-term sentence. The trial court considered defendant's lengthy criminal history and the conduct involved in the instant offense, including its nonviolent nature, and sentenced defendant to eight years in prison.

¶ 8 On appeal, defendant raised four issues. First, he argued that the evidence presented on the "without authority" element of the burglary count was insufficient to convict. Second, he maintained that the evidence was also insufficient to convict with respect to the element of burglary that requires that the defendant intend to commit a theft or a felony upon entry. Third,

defendant sought a new trial because the trial judge prohibited jurors from taking notes during trial, contrary to section 115-4(n) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-4(n) (West 2014)). And finally, defendant sought to reduce the amounts assessed against him as part of his sentence from $557 to $490, contending that the trial court failed to grant the mandatory $5 per day credit against three of his assessments.

¶ 9 The appellate court reversed defendant's conviction outright based on the first issue noted above and found it unnecessary to reach the remaining issues as a result, although in *dicta*, it briefly addressed the fourth issue regarding jury note taking. 2018 IL App (3d) 150352, ¶¶ 38-41. With respect to its reversal based on the first issue, the appellate court refused to apply the "limited authority" doctrine of *Weaver* to the facts of this case because it felt that (1) *Weaver* was distinguishable on the facts (*id.* ¶ 23), (2) the passage of the retail theft statute seven years after *Weaver* evinced a legislative intent to "occup[y] the field of shoplifting crimes" (*id.* ¶ 31), and (3) this court's decision in *People v. Bradford*, 2016 IL 118674, ¶¶ 24-25 (holding that there are two kinds of burglary—(a) entering a building without authority and (b) remaining in a building without authority—and *Weaver*'s definition of "without authority" for purposes of burglary by *entering* did not apply to burglary by *remaining*), "changes the law and effectively overrules" application of *Weaver* to the facts of the present case (2018 IL App (3d) 150352, ¶ 28).

¶ 10 As noted above, we granted the State's petition for leave to appeal.

¶ 11 ANALYSIS

¶ 12 Before this court, the State argues that *Weaver* cannot be distinguished from the present case and that *Bradford* clearly did not overrule application of *Weaver* to cases where the burglary charge is based on an *entry* into a store with the intent to commit a retail theft inside. Moreover, the State maintains that there is absolutely no basis for the appellate court's conclusion that by passage of the retail theft statute seven years after *Weaver*, the legislature somehow intended to change the long-standing application of the limited authority doctrine in burglary cases where a defendant entered a store with the intent to shoplift some item of merchandise.

¶ 13 Defendant in response argues that he never exceeded the scope of his physical authority to be in the store given that he entered during normal business hours and at all times stayed in areas open to the public. He further contends that the *Weaver* rule is inconsistent with the retail theft statute and that *Bradford* should be extended to exonerate him in the present situation. He contends that the State therefore failed to prove the "without authority" element of the burglary statute.

¶ 14 The parties agree that the question presented is one of statutory construction, which involves an issue of law that is subject to *de novo* review by this court. *Bradford*, 2016 IL 118674, ¶ 15. The primary objective in statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indication of that intent is the statutory language itself, giving it its plain and ordinary meaning. *People v. Giraud*, 2012 IL 113116, ¶ 6. When the legislature chooses not to amend a statute following judicial construction, it is presumed that the legislature has acquiesced in the court's construction of the statute and the declaration of legislative intent. *People v. Espinoza*, 2015 IL 118218, ¶ 27.

- 4 -

¶ 15    Section 19-1(a) of the Criminal Code of 2012 provides, in part, as follows: "A person commits burglary when without authority he or she knowingly enters or without authority remains within a building, *** or any part thereof, with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (West 2014). As this court explained in *Bradford*, the burglary statute provides for two possible ways to commit the crime of burglary: (1) by entering without authority and with the intent to commit a felony or theft or (2) by remaining without authority and with the intent to commit a felony or theft. *Bradford*, 2016 IL 118674, ¶ 13.

¶ 16    In the present case, defendant was charged with and convicted of the first type of burglary—burglary by unauthorized entry. For over 100 years, Illinois case law has recognized that entering a retail store with the intent to commit a theft amounts to the crime of burglary. See *People v. Kelley*, 274 Ill. 556, 558 (1916) (reversing the conviction for burglary only because there was no evidence that the defendant intended to commit the theft at the time he entered the store); see also *People v. Brown*, 397 Ill. 529, 530 (1947) (defendant's burglary conviction upheld where he entered the building of a gasoline filling station open 24 hours to the public with the intent to steal); see also *People v. Moore*, 2018 IL App (2d) 160277, ¶¶ 18, 30 (noting that for over a century the rule in Illinois has been that entering a retail store with intent to commit a theft constitutes burglary).

¶ 17    In *Weaver*, 41 Ill. 2d at 439, this court definitively interpreted the portion of the current burglary statute criminalizing burglary by entering. *Bradford*, 2016 IL 118674, ¶ 21. There, the defendant was convicted of burglary after police observed him standing near a vending machine in a laundromat open to the public and found in his possession $50 worth of coins and keys that could open the vending machine. This court rejected the defendant's contention that the evidence was insufficient to establish that he entered the laundromat without authority where it was open to the public at the time in question and he therefore could have entered as a business invitee. *Weaver*, 41 Ill. 2d at 438-39. This court held that the "authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open." *Id.* at 439. And "[a]n entry with intent to commit a theft cannot be said to be within the authority granted patrons of a laundromat." *Id.* Although the defendant testified that he had entered the laundromat because his companion wanted to use the telephone, other evidence—including the fact that there was an available telephone outside, that neither defendant nor his companion had laundry, and that they were in possession of keys that opened the laundromat's vending machine—sufficed to establish that the defendant entered the laundromat with the intent to steal and thus entered "without authority." *Id.*

¶ 18    In the case at bar, the appellate court found that the limited authority doctrine set forth in *Weaver* did not apply because the defendant in *Weaver* "used burglary tools to access nonpublic areas" and, according to the appellate court, this fact "distinguish[ed]" *Weaver* from the case before it. 2018 IL App (3d) 150352, ¶ 23. We find that the appellate court's attempt to distinguish *Weaver* demonstrates a profound misunderstanding of *Weaver*'s holding. *Weaver*'s holding that the evidence supported a burglary conviction did not rest on the defendant's *use* of keys to access the vending machine but rather on his *possession* of the keys, which (in addition to other circumstantial evidence) established that he had "entered [the building] with an intent to commit a theft." *Weaver*, 41 Ill. 2d at 439. And that intent, *Weaver* held, vitiated any authority that he otherwise had to enter the open business, because "authority to enter a business building, or other building open to the public, extends only to those who

- 5 -

enter with a purpose consistent with the reason the building is open" and not to those who enter with the intent to commit a theft inside. *Id.*

¶ 19 The same principle applies here. Just as the evidence in *Weaver* established that the defendant entered the laundromat with the intent to commit a theft, the evidence here—which showed that defendant and an accomplice placed two backpacks on a coin-exchange machine in the Walmart vestibule, entered the store proper, and a short time later returned to retrieve the backpacks in order to stuff merchandise into them—was arguably sufficient to prove that defendant entered the store with the intent to commit a theft.[1] And, if it is in fact the case that defendant had the intent to commit a theft when he entered the Walmart, then, under *Weaver*, it must necessarily follow that his entry was "without authority" within the meaning of section 19-1(a) of the burglary statute.

¶ 20 In the 50-plus years since *Weaver* was decided, numerous Illinois decisions have applied *Weaver*'s holding to cases of burglary involving the unauthorized entry of a retail establishment. *Moore*, 2018 IL App (2d) 160277, ¶ 19 (collecting cases); see also *People v. Burlington*, 2018 IL App (4th) 150642, ¶ 21 (citing *People v. Gharrett*, 2016 IL App (4th) 140315, ¶ 53, as collecting cases that have applied *Weaver*'s holding). The instant appellate court decision acknowledged this long line of appellate court case law that follows *Weaver* and holds that one who enters a retail store with the intent to commit a theft enters "without authority." The appellate court concluded, however, that this court's decision in *Bradford* amounted to a change in the law and "effectively overrules" application of *Weaver* when the situation involves a person who enters a shop intending to commit retail theft. 2018 IL App (3d) 150352, ¶ 28.

¶ 21 We find that the appellate court has misread *Bradford*. Nothing in *Bradford* prevents application of *Weaver*'s holding to the type of burglary that involves unauthorized entry, even if that entry is with the intent to commit a retail theft. The question before this court in *Bradford* was whether the analysis of *Weaver* should be extended to cover the second type of burglary, burglary by remaining. *Bradford* did not question *Weaver*'s holding with respect to burglary by unauthorized entry. Instead, it cited it with approval, without the least bit of suggestion that it would not apply to burglary by unauthorized entry based on the intent to commit a retail theft. *Bradford*, 2016 IL 118674, ¶¶ 21-23.

¶ 22 In *Bradford*, the defendant was charged with and convicted of burglary for *remaining* in an open retail store without authority and with the intent to commit a theft. The appellate court in that case agreed with the State that *Weaver*'s definition of without authority, for purposes of burglary by entering, extended to burglary by remaining. *Id.* ¶ 24. Citing *Weaver*, the appellate court held that " 'just as a defendant's *entry* is "without authority" if it is accompanied by a contemporaneous intent to steal, so too must a defendant's *remaining* be "without authority" if it also is accompanied by an intent to steal.' " (Emphases in original.) *Id.* (quoting *People v. Bradford*, 2014 IL App (4th) 130288, ¶ 28). The appellate court never identified the

---

[1]The parties agree that this court must assume for purposes of the single issue appealed to this court that the evidence was sufficient to establish defendant's intent to commit a theft upon entry. They also agree that if this court reverses the appellate court's judgment, the cause should be remanded to the appellate court for consideration of defendant's other arguments that were not addressed by the appellate court, including defendant's separate challenge to the sufficiency of evidence as to defendant's intent to commit a theft at the time of his entry to the building.

- 6 -

precise moment that the defendant began to unlawfully remain in the store. *Id.* ¶ 9. On appeal to this court, the defendant in *Bradford* argued that he never exceeded the scope of his authority to be in the store and that burglary by remaining was never intended to apply to such a situation, which amounted to no more than ordinary shoplifting. The State in turn relied upon the holding of the appellate court and argued that the burglary statute could also apply where a defendant entered the store lawfully (as opposed to unlawfully where he had formed the intent to steal upon entry), then subsequently formed the intent to commit a theft, but then remained in the store longer than necessary to steal the items. *Id.* ¶¶ 20-21.

¶ 23      This court in *Bradford* rejected the State's approach and agreed that the defendant's interpretation was the only reasonable reading of the statute. *Id.* ¶ 25. This court rejected the State's rendering because it "[was] unworkable, [had] the potential to lead to absurdity, and [was] inconsistent with both the retail theft statute and the historical development of the burglary statute." *Id.*

¶ 24      We find that none of the concerns expressed in *Bradford* apply to burglary involving an unauthorized entry based on the intent to commit retail theft. First, *Bradford* concluded it would be "unworkable" to apply the limited authority doctrine in situations in which a defendant enters an open store with no intent to commit a theft (thus entering with authority) but subsequently develops the intent to commit a theft while in the store. *Id.* ¶¶ 25-26. *Bradford* explained that, in such cases, "it is not clear what evidence would be sufficient to establish that a defendant 'remain[ed]' within a public place in order to commit a theft" and thereby transform his authorized entry into an unauthorized remaining. *Id.* ¶ 26. As the court noted, there is simply no way to define "what a defendant must do, or what duration of time he must spend in a place, to remain there without authority." *Id.*

¶ 25      By contrast, the question of whether a person *entered* a store with intent to commit a theft presents no such difficulties. Unlike the amorphous concept of an "act of remaining" (*id.* ¶ 9), an entry is a discrete event in time. Assessing a person's intent at the time of entry is a task that is well within a trier of fact's competency, even if intent must often be proven by circumstantial evidence. *People v. Richardson*, 104 Ill. 2d 8, 13 (1984); compare *Weaver*, 41 Ill. 2d at 439 (concluding that circumstantial evidence established that the defendant entered an open business with the intent to commit a theft), *People v. Rudd*, 2012 IL App (5th) 100528, ¶¶ 14-16 (circumstantial evidence proved that the defendant and another man had a carefully orchestrated plan to commit retail theft from Walmart and were thus properly convicted of burglary by unauthorized entry), and *People v. Smith*, 264 Ill. App. 3d 82, 87-88 (1994) (circumstantial evidence of possession of items used to facilitate offense proved the defendant's intent at the time he entered retail store), with *People v. Durham*, 252 Ill. App. 3d 88, 92-93 (1993) (concluding that evidence was insufficient to establish that the defendant intended to commit theft when entering store).

¶ 26      *Bradford* also relied upon the related concern that applying the limited authority doctrine, as the appellate court had done, to hold that a person remains without authority as he moves through the store to steal merchandise, would produce absurd results by "arbitrarily distinguish[ing] between a defendant who shoplifts one item in a store and leaves immediately afterward and a defendant who shoplifts more than one item or lingers inside a store before leaving." *Bradford*, 2016 IL 118674, ¶ 26. But applying the limited authority doctrine in cases of burglary based on unauthorized entry does not create any similar arbitrary distinctions.

Rather, the only relevant distinction that must be made in such cases is between a person who enters with intent to commit a theft and one who does not. See *Weaver*, 41 Ill. 2d at 439 ("A criminal intent formulated after a lawful entry will not satisfy the statute."). Clearly, this distinction is not an arbitrary one, as it would be rational for the legislature to determine that one who enters a store with a preconceived plan to steal merchandise is more culpable than one who, once inside a store, impulsively takes merchandise. See *Moore*, 2018 IL App (2d) 160277, ¶ 24.

¶ 27    *Bradford*'s refusal to apply the limited authority doctrine to *remaining* cases also rested on the recognition that one who innocently enters a store and later commits a theft inside necessarily formed the intent to steal while in the store. To hold a defendant guilty of burglary in such cases would convert nearly all retail theft into burglary, effectively negating the retail theft statute, *Bradford* reasoned.

¶ 28    In contrast, application of the limited authority doctrine to persons who *enter* with intent to commit a theft presents no such concerns. The mere fact that a person commits a theft after entering a store will not establish that he intended to commit a theft upon entry. Rather, there would have to be some other evidence—even if circumstantial—supporting a finding that the defendant entered the premises with the required intent. *Smith*, 264 Ill. App. 3d at 87; compare *id.* at 87-88 (finding evidence sufficient to support element of entry with intent to commit a theft where the defendant entered clothing store with plastic bag used to hide stolen coat and police found in his car the wire cutters used to remove coat from rack), with *Durham*, 252 Ill. App. 3d at 92 (reversing burglary conviction of the defendant who stole men's suit where he carried nothing into store that would indicate an intent to commit a theft and his conduct was that of a normal shopper browsing items). Thus, there is no reason to think that applying the limited authority doctrine to charges of burglary based on unauthorized entry on account of an intent to commit retail theft will transform all (or even a substantial number of) retail thefts into burglaries.

¶ 29    As part of its unfounded concern that allowing an unauthorized-entry burglary conviction when retail theft is involved would effectively negate the retail theft statute, the appellate court surmised that "it is a miniscule percentage of shoplifters who form the intent to steal only after entering the store." 2018 IL App (3d) 150352, ¶ 33. The appellate court cited no authority for its speculative conclusion. At any rate, the appellate court's conclusion misses the point because unauthorized-entry burglary requires the concurrent intent to commit a theft or felony. *Moore*, 2018 IL App (2d) 160277, ¶ 27. Given the difficulty of proving a defendant's intent at the moment he or she enters a store, it is more probable that the vast majority of suspects will have to be charged only with retail theft because the State has insufficient evidence of intent at entry. *Id.* We agree with *Moore* and find that the instant appellate court decision erroneously speculated that the retail theft statute would be rendered a nullity if the long-standing *Weaver* rule continued to apply.

¶ 30    *Bradford*'s final reason for refusing to extend the limited authority doctrine to burglary by remaining was that it would be "at odds with the historical development of the burglary statute." *Bradford*, 2016 IL 118674, ¶ 29. *Bradford* traced the current burglary statute's "remains within" language to a pre-1961 statutory provision that made it unlawful to be " 'found in any building *** with intent to commit *** [a] larceny or other felony.' " *Id.* (quoting Ill. Rev. Stat. 1959, ch. 38, ¶ 86). That provision, this court noted, necessarily implied

that the building or area where the defendant was found or discovered was closed to the public. *Id.* ¶ 30. Because the current burglary statute was intended to codify the existing law of burglary, *Bradford* concluded that the statute's "remains within" language, like its " 'burglar found in building' " predecessor, must be limited to those who are "found or discovered in a place where they are not authorized to be." *Id.*

¶ 31 The history of the unauthorized-entry portion of the statute does not support a similar conclusion. This court has construed the term "building" in the pre-1961 version of the burglary statute to include any " 'structure or edifice, such as a *** *shop* or the like, designed for *** the shelter of property.' " (Emphasis added.) *People v. Blair*, 52 Ill. 2d 371, 374 (1972) (quoting *People v. Gillespie*, 344 Ill. 290, 294 (1931)). That definition remains valid today, as the present burglary statute is a codification of the preexisting law in Illinois. *Id.* Thus, a retail store or shop is clearly a "building" within the meaning of the burglary statute. Moreover, prior to 1961, the burglary statute made it unlawful to "willfully and maliciously, without force **** enter[ ] into any *** building, with intent to commit *** [a] felony or larceny." Ill. Rev. Stat. 1959, ch. 38, ¶ 84. It was of no consequence under the statute whether the entry was with or without authority; the relevant concern instead was whether the evidence showed the requisite intent to commit the theft at the time of the defendant's entry. See *People v. Schneller*, 69 Ill. App. 2d 50, 53 (1966).

¶ 32 At any rate, as noted above, *Weaver* construed the current burglary statute over 50 years ago (and 7 years after it was enacted) as granting a patron of a building open to the public only limited authority to enter the establishment for a "purpose consistent with the reason the building is open." *Weaver*, 41 Ill. 2d at 439. And "[a]n entry with intent to commit a theft cannot be said to be within the authority granted patrons." *Id.* The appellate court has consistently, and quite correctly, applied this holding to open retail shops. And while the General Assembly has amended the burglary statute a number of times in the half-century since *Weaver* was decided, it has never acted to reverse *Weaver* and its progeny's interpretation of the statute. When the legislature does not address by way of amendment a judicial construction of a statute by this court, it is presumed that the legislature has acquiesced in that interpretation (*People v. Espinoza*, 2015 IL 118218, ¶ 27), and such a construction becomes as much a part of the statute as if plainly written into it (*People v. Williams*, 235 Ill. 2d 286, 293-94 (2009)).

¶ 33 Finally, we note that defendant makes a broad and vague argument that the legislature did not intend for the limited authority doctrine to apply to an unauthorized-entry burglary involving retail stores following the enactment of the retail theft statute. Defendant asserts that the legislature intended for acts of shoplifting to be prosecuted and punished under the retail theft statute rather than the burglary statute.

¶ 34 While it is true that the legislature intended acts of retail theft to be prosecuted under the retail theft statute, defendant's argument misses the point. His alleged act of shoplifting *was* prosecuted under the retail theft statute. He was convicted of burglary, by contrast, for his distinct act of entering a store with the intent to shoplift. The two crimes contain different elements and address distinct harms. Burglary requires an intent to commit a theft upon entry and is complete upon the moment of entry whether or not any theft actually occurs, whereas retail theft requires that the defendant take possession of merchandise with the intent of permanently depriving the merchant of the item without paying full retail value (see *People v. Caplinger*, 162 Ill. App. 3d 74 (1987)). Defendant's argument also rests on the mistaken

premise that the harm caused by shoplifting and the harm caused by entering a store with the intent to shoplift are measured in the same way—by the value of the items a person steals or intends to steal. But, as noted above, a person who enters a store with the intent to steal is at least arguably more culpable than a person who steals after entering innocently. Although defendant may disagree with the assessment of the relative culpability posed by his conduct or the risk presented by it, it is the legislature's role to declare and define conduct constituting a crime and to determine the nature and extent of the punishment for it. *People v. Steppan*, 105 Ill. 2d 310, 319 (1985).

¶ 35    As noted, the limited authority doctrine underlying defendant's conviction for burglary was well settled by the time the retail theft statute was enacted, and nothing in the retail theft statute indicates a legislative intent to abrogate the doctrine with respect to burglaries motivated by the desire to shoplift. See *People v. Jones*, 214 Ill. 2d 187, 199 (2005) (because the legislature is presumed to act with knowledge of previous judicial decisions, a newly enacted statute will generally not be construed to change settled law unless its terms clearly require such a construction). Aside from there being nothing in the text of the retail theft statute to indicate that it intended to eliminate unauthorized-entry burglary in cases where a defendant enters with an intent to shoplift, we note that we have scoured the legislative history and debate surrounding the enactment of the retail theft statute and can find nothing that would support defendant's argument. We have only found that the retail theft statute was enacted for the purpose of combating the growing problem of retail theft in Illinois. *Bradford*, 2016 IL 118674, ¶ 27. And the legislative debate suggests that the idea behind the law was to give greater tools to merchants and law enforcement to fight the problem, not to help the retail thief.

¶ 36    The dissent states that its review of the legislative debates and history leads to the "opposite conclusion." *Infra* ¶ 53. The dissent bases its conclusion, however, on an incomplete reconstruction of the legislative debate. First, it quotes in very limited part a few phrases of some comments of Senator Harris, one of the sponsors who introduced the bill. Senator Harris actually said the following about the bill just before it was voted on and eventually became the retail theft act in 1975:

> "It is the work product of over a year of evaluation and study to react to the very serious problem of retail theft. The United States Federal Bureau of Investigation has calculated that the retail loss from retail theft in Illinois is some eight hundred million dollars a year. To the extent that we can pinpoint a more effective response to discourage this kind of loss on a continuing basis, we will achieve a result definitely in the public interest. This bill is supported by the Illinois State's Attorney Association ***." 79th Ill. Gen. Assem., Senate Proceedings, May 7, 1975, at 97 (statements of Senator Harris).

Obviously this is the exact opposite of the dissent's conclusion that the legislature intended to override the *Weaver* holding. It is doubtful that the bill would have been supported by the state's attorneys of Illinois if that had been the case, nor would the sponsor of the bill have touted the prosecutors' support of the bill if the intent had been to take away a tool available to prosecutors to fight crime. This is borne out by further comments of Senator Harris when he stated as follows:

> "I think now we do have a truly effective means to respond to the very serious question of retail theft in Illinois particularly. I think appropriate safeguards are in the bill to

provide for those persons that might be found to be offenders under the provisions of this new Retail Theft Act. I think the traditional American and Illinois system of jurisprudence is properly maintained here, but a more effective tool will be available to the State's Attorneys if this becomes law." *Id.* at 97-98.

¶ 37 The dissent quotes the short phrase from the above quote from Senator Harris about " 'safeguards' " in the law to " 'provide for *** offenders.' " *Infra* ¶ 54. But the senator was not speaking of anything close to what the dissent implies. The senator was most certainly not speaking about limiting the charges that might be brought against an offender or about abrogating the *Weaver* rule in cases of burglary committed upon entry "without authority" to an open retail establishment. The "safeguards" the senator was referring to were the normal safeguards a defendant is provided in any criminal case; a quick examination of the act reveals that there are no other kinds of safeguards in the statute. Instead, the senator was simply responding to criticism by those opposed to the bill that it was too tough—for example, because it, among other things, (1) created a presumption of a guilty intent when a person conceals on his person or in his belongings unpurchased merchandise and then proceeds to carry them beyond the last known station for payment, (2) allowed detention by the merchant of a retail theft suspect, (3) created civil liability for the retail thief, as well as his parents or legal guardian if the thief was a minor, and (4) made a subsequent offense, regardless of whether the retail value of the merchandise was less than $150, a Class 4 felony even though the current theft statute at that time did not make a subsequent offense a felony.

¶ 38 Representative Sangmeister, whom the dissent quotes only in very limited fashion, confirms that the purpose of the legislation was to protect the victims of crime:

"The purpose of the act has been to combat the growing [amount of] retail theft and I think everyone on the Floor of this House knows that shoplifting has always been a problem here and the rest of the United States and this is Illinois' effort to do something about it. Shoplifting and employee theft in the State of Illinois now exceeds $3,000,000 per day and is a problem, frankly, that we have to face. Illinois has only had a theft act and not a retail theft act. Because this problem has been recognized it was a bipartisan[ ] [effort] put together between Senator Harris and Senator Partee and really is their Bill. This Bill has received a good working over in both judiciary houses, in the Senate and the House. Both of which had it in a subcommittee. The contents of the Bill without going into a lot of detail on it is, of course, it spells out and defines a crime. It establishes certain presumptions and it provides for detention in certain circumstances by the shopkeeper. It inserts civil liability which is under the Parental Responsibility Law. And the penalty is the same as it was under the theft statute for a first offense under a $150 Class A misdemeanor; a second offense a Class 4 penalty. I really think it is high time that Illinois passes such legislation. I'm sure you've heard from a lot of your retailers in your district concerning it. It is a good Bill." 79th Ill. Gen. Assem., House Proceedings, June 11, 1975, at 113 (statements of Representative Sangmeister).

¶ 39 Consistent with the legislative debate we have quoted above, the General Assembly placed a legislative declaration at the beginning of the retail theft act. This legislative declaration states that "[i]t is the public policy of this State that the substantial burden placed upon the economy of this State resulting from the rising incidence of retail theft is a matter of grave concern to

- 11 -

the people of this State who have a right to be protected in their health, safety and welfare from the effects of this crime." Ill. Rev. Stat. 1975, ch. 38, ¶ 16A-1.

¶ 40    Despite the overwhelming evidence noted above that the intent of the act was to combat the growing problem of retail theft—not to help the retail thief by abrogating the *Weaver* rule— the dissent essentially concludes that nothing in the legislative history regarding the retail theft statute suggests that the legislature meant for the burglary statute to be used as an alternative means of prosecuting shoplifters. See *infra* ¶ 59. We disagree with the dissent's conclusion on many levels.

¶ 41    First of all, in this case, as in all cases of burglary based on unauthorized entry, the burglary statute is not being used *as an alternative means of prosecuting shoplifters*. Here, the crime of burglary was complete upon entry to the building, provided it can be established that defendant had the requisite intent to commit a felony or a theft at entry. As noted above, burglary has different elements than theft and is not dependent on an actual theft.

¶ 42    Second, the observation that there is nothing in the retail theft debate about burglary completely reverses the correct legal inquiry that should be undertaken by this court. When the legislature acts to pass a statute, such as the retail theft statute, it is presumed to act with full knowledge of all existing and prior statutory and case law. *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 70; *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 218 (1983). The fact that the legislative debate does not mention the *Weaver* rule or burglary is unremarkable if we assume, as we must, that the General Assembly already knew the law and meant no change to it with respect to other statutes and their interpretation by the courts. As noted above, this court's judicial construction in 1968 in *Weaver* of the "without authority" language of the burglary statute had become as much a part of that statute as if it was written into it by the time of the 1975 enactment of the retail theft statute. Thus, if the legislature meant to change the law by the enactment of the retail theft statute, so that the burglary statute would no longer apply when the business open to the public was part of a special subset of businesses that sells retail merchandise, then it would have been incumbent upon the legislature to make an amendment to the already existing law. Repeal by implication is not favored. *Lily Lake Road Defenders v. County of McHenry*, 156 Ill. 2d 1, 9 (1993). And if the legislature meant to change the existing law, it had to indicate a clear intent to do so. And even if there was an alleged conflict between the burglary statute and the retail theft statute, which there is not, given the differing elements, this court would simply be required to construe both statutes so as to give both effect. *Id.*

¶ 43    We also note that the legislature that enacted the retail theft statute did not also amend the burglary statute to exclude shop-lifting motivated entries into open retail stores. And we further note that the legislature did not amend the burglary statute by carving out an exception for retail-theft motivated entries, even though it most certainly knew how to carve out such an exception if it had wanted to.[2] This indicates a legislative intent to enforce both the burglary statute as interpreted in *Weaver* and the more recently enacted retail theft statute in order to

---

[2]In fact, the burglary statute does carve out one exception to its reach as follows: "This offense shall not include the offenses set out in Section 4-102 of the Illinois Vehicle Code." 720 ILCS 5/19-1(a) (West 2014). Section 4-102 of the Illinois Vehicle Code in turn sets forth various misdemeanor offenses for damaging, tampering with, or working on a vehicle without authority. See 625 ILCS 5/4-102 (West 2014).

"ensure that defendants are held accountable for the full measure of their conduct and harm caused." See *People v. Miller*, 238 Ill. 2d 161, 173 (2010).

¶ 44 Lastly, we note that after the instant appellate court panel decided this case, two other appellate court panels have declined to follow its departure from the settled precedent of *Weaver*. See *Moore*, 2018 IL App (2d) 160277; *Burlington*, 2018 IL App (4th) 150642. Both of these recent decisions firmly disagreed with the instant appellate court decision's undue focus on and criticism of prosecutorial discretion. In *Burlington*, the court stated:

" 'Generally, prosecutorial discretion is a valuable aspect of the criminal justice system.' *People v. Christy*, 139 Ill. 2d 172, 180 *** (1990). The fact that more than one offense covers a defendant's course of conduct has never been a valid reason for removing the discretion of the prosecutor to decide which offense, if any, to charge. Thus, we disagree with *Johnson*'s statement 'courts should not interpret criminal statutes to provide prosecutors unbridled discretion to arbitrarily charge some shoplifters with Class 2 felony burglary and others with Class A misdemeanor retail theft under similar circumstances.' [Citation.] Concerns over the exercise of prosecutorial discretion cannot alter the plain language of the statute." *Burlington*, 2018 IL App (4th) 150642, ¶ 32.

Similarly, in *Moore*, the court wrote:

"We *** do not find that limiting a prosecutor's discretion to charge a defendant when his or her conduct falls under one or more provisions is a basis to depart from more than 100 years of precedent. The state's attorney has the responsibility of evaluating evidence and other pertinent factors and determining what, if any, offense should be charged. *People v. Williams*, 147 Ill. 2d 173, 256 (1991) (citing *People v. Rhodes*, 38 Ill. 2d 389, 396 (1967)). Thus, the prosecutor is vested with wide discretion in enforcing the criminal laws. *Id.* (citing *Marcisz v. Marcisz*, 65 Ill. 2d 206, 210 (1976)." *Moore*, 2018 IL App (2d) 160277, ¶ 26.

¶ 45 We agree with the analyses of *Moore* and *Burlington* and reject the rationale of the instant appellate court decision.

¶ 46                                                    CONCLUSION

¶ 47 For the foregoing reasons, we hold that the appellate court erred in its analysis of the limited-authority doctrine and in holding as a matter of law that there was not sufficient evidence to support the element of the burglary statute that requires a defendant's entry to be "without authority." Accordingly, we reverse the judgment of the appellate court. And we remand the cause to that court for it to address the remaining issues that it did not reach, including whether the evidence was sufficient to establish that defendant had the requisite intent to commit a theft upon his entrance to the store.

¶ 48         Appellate court judgment reversed.

¶ 49         Circuit court judgment affirmed.

¶ 50         Cause remanded with directions.

¶ 51    JUSTICE THEIS, dissenting:

¶ 52    At issue is whether a person who enters a retail establishment during regular business hours, remains within areas of the store that are open to the public, and shoplifts $77 worth of children's clothing may properly be convicted of burglary by entry based on the limited authority doctrine established in *People v. Weaver*, 41 Ill. 2d 434 (1968). Given the enactment of the retail theft statute seven years after *Weaver*, the answer is no.

¶ 53    The majority correctly notes that the question presented involves statutory construction. As such, our primary goal is to ascertain and give effect to the legislature's intent. See, *e.g.*, *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007) ("In determining the General Assembly's intent, we may properly consider not only the language of the statute, but also the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved."). The majority claims that the legislative history and debates surrounding the enactment of the retail theft statute do not indicate that the General Assembly intended to eliminate burglary by entry in cases where a defendant enters a store with the intent to shoplift. *Supra* ¶ 35. As I explain below, my careful review of the legislative history and debates leads me to the opposite conclusion.

¶ 54    In Illinois, the crime of retail theft was created in 1975. One of the senators who introduced the bill described it as "the work product of over a year of evaluation and study to react to the very serious problem of retail theft." 79th Ill. Gen. Assem., Senate Proceedings, May 7, 1975, at 97 (statements of Senator Harris). Developing "a more effective response to discourage" theft from retail establishments was "definitely in the public interest," he observed. *Id.* Further, the bill included "appropriate safeguards" to "provide for those persons that might be found to be offenders under the provisions of this new Retail Theft Act." *Id.* at 97-98.

¶ 55    The retail theft statute represented a bipartisan effort to resolve the problem of shoplifting and employee theft in Illinois. According to one representative, it was problematic for "Illinois [to] ha[ve] only had a theft act and not a retail theft act." 79th Ill. Gen. Assem., House Proceedings, June 11, 1975, at 113 (statements of Representative Sangmeister). He explained that the bill had been worked on "from both a *** prosecutorial and defense standpoint" and opined that it was "a very responsible step forward in this area." *Id.* A representative who opposed the bill insisted that "people who are responsible for retail theft" generally were "not constant, arrogant criminals." *Id.* at 114 (statements of Representative Duff). Rather, referencing Jean Valjean, he suggested that retail thieves were "youngsters in stores" or "poor people who steal bread" and was hesitant to overly penalize them.[3] *Id.* The retail theft statute ultimately passed with broad support.

¶ 56    The legislature has continually refined the retail theft statute. In 1986, the General Assembly amended the definition of retail theft to include attempting to return unpaid merchandise for a refund or for credit. 84th Ill. Gen. Assem., House Proceedings, July 1, 1986, at 20, 26 (statements of Representative Homer); see Pub. Act 84-1391, § 1 (eff. Sept. 18, 1986) (adding Ill. Rev. Stat. 1987, ch. 38, ¶ 16A-3(f), now codified at 720 ILCS 5/16-25(a)(6) (West 2012)). The following year, the statute was amended to provide that "a person who uses or

_____

[3]Jean Valjean, the protagonist in Victor Hugo's novel, *Les Miserables* (1862), was imprisoned for five years for stealing a loaf of bread. See, *e.g.*, Encyclopaedia Britannica, https://www.britannica.com/topic/Les-Miserables-novel-by-Hugo (last visited June 12, 2019) [https://perma.cc/EKD3-Z2S3].

- 14 -

possesses with the intent to use any theft detection shielding device or any theft detection device remover with the intent to permanently deprive a merchant of retail merchandise commits retail theft." 85th Ill. Gen. Assem., House Proceedings, June 16, 1987, at 102 (statements of Representative Barnes). A representative noted that "many attorneys" had recommended the amendment to ensure that "anybody that goes into a store with the intent to steal the merchandise *** can be found guilty." *Id.*; see Pub. Act 85-749, § 1 (eff. Jan. 1, 1988) (adding Ill. Rev. Stat. 1987, ch. 38, ¶ 16A-3(g), now codified at 720 ILCS 5/16-25(a)(7) (West 2012)).

¶ 57    In 1989, another amendment was proposed to penalize persons who rented or leased personal property but failed to timely return it to the owner. 86th Ill. Gen. Assem., House Proceedings, May 19, 1989, at 102 (statements of Representative Homer); see Pub. Act 85-356, § 1 (eff. Jan. 1, 1990) (adding Ill. Rev. Stat. 1989, ch. 38, ¶ 16A-3(h), now codified at 720 ILCS 5/16-25(a)(8) (West 2012)). Years later, an amendment was introduced to increase the penalties for a person who, after committing retail theft, fled from the store by use of a designated emergency exit. 94th Ill. Gen. Assem., House Proceedings, Mar. 8, 2005, at 4 (statements of Representative Beiser); see Pub. Act 94-449, § 5 (eff. Aug. 4, 2005) (adding 720 ILCS 5/16A-3.5, now codified at 720 ILCS 5/16-25(b) (West 2012)). In 2010, the legislature introduced an amendment to increase the felony thresholds for retail theft from $150 to $300 and to "allow for multiple retail thefts committed by the same person as part of a continuing course of conduct *** [to] be prosecuted *** as if it was a single crime." 96th Ill. Gen. Assem., Senate Proceedings, Mar. 24, 2010, at 39 (statements of Senator Cullerton); see Pub. Act 96-1301, § 5 (eff. Jan. 1, 2011) (amending 720 ILCS 5/16A-10, now codified at 720 ILCS 5/16-25(f) (West 2012)). Diverse organizations, such as the Illinois Retail Merchants Association; the Criminal Law Edit, Alignment, and Reform Commission; and the Cook County State's Attorney's Office supported the amendment. *Id.*

¶ 58    Thus, the retail theft statute was enacted to address the specific concerns posed by theft from a retail establishment. A thorough reading of the debates demonstrates that the General Assembly made retail theft a separate crime because it wanted to discourage the specific conduct that it termed a "matter of grave concern." *Supra* ¶ 39. At the same time, as the majority acknowledges, the legislature's intent was to " 'pinpoint a more effective response to discourage this kind of loss.' " *Supra* ¶ 36 (quoting 79th Ill. Gen. Assem., Senate Proceedings, May 7, 1975, at 97 (statements of Senator Harris)).

¶ 59    The majority dismisses this reading as "an incomplete reconstruction of the legislative debate" (*supra* ¶ 36), and it offers a handful of block quotes from two senators to illustrate that the legislature intended to combat retail theft. I agree. Indeed, the majority wholly mischaracterizes my view of the statute. Let me be very clear: I do *not* believe that this legislation was an effort "to help the retail thief" (*supra* ¶ 35) or "to take away a tool available to prosecutors to fight crime" (*supra* ¶ 36). Without question the legislature sought to punish shoplifting; however, it enacted the retail theft act to impose a proportional penalty on the retail thief. Based on input from various stakeholders over the years, the legislature has fine-tuned the statute to mete out the appropriate punishment for shoplifters.

¶ 60    Despite the General Assembly's efforts to craft a measured response to the problem of retail theft, the majority would uphold the burglary conviction of a shoplifter based on the limited authority doctrine set forth in *Weaver*. In that case, police officers caught the defendant

and his accomplice inside a laundromat shortly after midnight. The defendant was standing at the door of a vending machine, which had been opened. After searching him, officers found a bag containing hundreds of keys that opened vending machines, as well as more than $50 in coins. *Weaver*, 41 Ill. 2d at 435-36. The defendant challenged his convictions for burglary and possession of burglary tools. This court rejected his claim that, because the laundromat was open to the public, he could have entered as a business invitee rather than as a burglar. *Id.* at 438-39. We ruled that the "authority to enter a business building *** extends only to those who enter with a purpose consistent with the reason the building is open." *Id.* at 439. We observed that "[a]n entry with intent to commit a theft cannot be said to be within the authority granted patrons of a laundromat." *Id.*

¶ 61    The majority would apply the *Weaver* rule here, asserting that our holding in that case rested entirely on the defendant's criminal intent at the time he entered the building. *Supra* ¶ 18. In my view, *Weaver* is inapposite for two reasons. First, as it relates to retail establishments, the decision has effectively been superseded. Seven years after *Weaver*, where this court applied the limited authority doctrine to a laundromat, the legislature enacted a separate statute to govern theft within a retail establishment. In other words, although we had upheld the burglary statute's application to a business building, the General Assembly created a more specific statute to address the particular concerns involved in retail theft. Given this timeline, "it strains logic to presume that the legislature intended most incidents of retail theft to be prosecuted as burglaries." *People v. Bradford*, 2016 IL 118674, ¶ 28; see also *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶ 31 (noting the "commonplace [rule] of statutory construction that when two conflicting statutes cover the same subject, the specific governs the general" (internal quotation marks omitted)).

¶ 62    Second, in *Weaver*, the defendant used burglary tools to enter into an area (the vending machine) that was otherwise closed to the public. His unprivileged entry into a nonpublic space likened the defendant's behavior to "a common-law breaking," such that we upheld his burglary conviction. *Weaver*, 41 Ill. 2d at 438-39.

¶ 63    Here, by contrast, the defendant walked into Walmart during normal business hours, shoplifted merchandise from public areas of the store, and left while the store was still open. He entered the store while it was open, and he did not exceed the scope of his authority as a member of the public to be there. Accordingly, I would find that the defendant's entry was not "without authority" and that his conduct amounted to retail theft, not burglary. See *Bradford*, 2016 IL 118674, ¶ 31 ("[A]n individual who enters a building lawfully, shoplifts merchandise within areas which are open to the public, then leaves during business hours, is guilty of ordinary retail theft.").

¶ 64    To appreciate why the defendant's conduct was not burglary, we must remember why burglary has been criminalized. See *Brucker*, 227 Ill. 2d at 514 (confirming that we may consider "the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved"). Legislatures have "singled out burglary because of its inherent potential for harms to persons." (Internal quotation marks omitted.) *Quarles v. United States*, ___ U.S. ___, ___, 139 S. Ct. 1872, 1879 (2019). That is, "[b]urglary is dangerous because it creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." (Internal quotation marks omitted.) *Id.* at ___, 139 S. Ct. at 1979; *cf.* Model Penal Code § 221.1, Explanatory Note (Am. Law Inst. 1985) (noting

that the "crime of burglary reflects a considered judgment that especially severe sanctions are appropriate for criminal invasion of premises under circumstances likely to terrorize occupants").

¶ 65    The legislative debates regarding the burglary statute reference this notion that a burglar's mere presence within a building is inherently unsettling. For example, one senator recounted the story of his neighbors' house having been burgled. 82d Ill. Gen. Assem., Senate Proceedings, May 19, 1981, at 227-28 (statements of Senator Davidson). His neighbor had driven "to the hospital to pick up her husband who was being discharged from a heart attack." *Id.* at 227. Upon returning to their driveway, the couple "opened the front door and saw chaos." *Id.* According to the senator, "the man didn't go into another heart attack, but he went into shock." *Id.* at 228; see also *id.* at 220 (statements of Senator DeAngelis) ("I don't know if any of you have ever had the experience of having your home burglarized, but it's a rather traumatic experience to walk into your home and find that everything has been thrown about ***.").

¶ 66    Separately, when debating an amendment to make burglary a lesser-included offense of residential burglary, a representative made the following observation: "if an individual comes in there without authority or remains there without authority, dangerous things can occur, frightening things can occur." 91st Ill. Gen. Assem., House Proceedings, April 13, 2000, at 48 (statements of Representative Turner). "Sometimes the home owner perhaps overreacts. Sometimes it causes a shooting or a death and it's a very serious offense ***." *Id.* These remarks indicate that burglary is punished severely because of the inherent destabilization that it is likely to cause.

¶ 67    By contrast, a person who enters Walmart with a backpack is not likely to destabilize the store's operations, and a shoplifter's mere presence within the store is unlikely to result in a violent confrontation. The majority is correct when it notes that burglary and retail theft "contain different elements and address distinct harms." *Supra* ¶ 34. However, the harm that the burglary statute protects against—the likelihood of a dangerous confrontation between the offender and a person who comes to investigate (see *Quarles*, ___ U.S. at ___, 139 S. Ct. at 1979)—does not exist with the average shoplifter. The majority also implies that there is some independent "harm caused by entering a store with the intent to shoplift." *Supra* ¶ 34. Tellingly, however, it does not identify that independent harm.

¶ 68    Contrary to the majority's suggestion, a shoplifter poses no meaningful risk of harm beyond the value of the stolen items. The retail theft statute already criminalizes the act of taking merchandise from a retail establishment without paying for it. See 720 ILCS 5/16-25(a)(1) (West 2014). There is no justifiable basis for penalizing a shoplifter as a burglar. See *Bradford*, 2016 IL 118674, ¶ 27 (observing that the retail theft statute takes various factors into account when determining how to punish a shoplifter, while the burglary statute "does not consider any of these proportionality factors").

¶ 69    The majority nonetheless insists that the defendant was properly convicted of burglary "for his distinct act of entering a store with the intent to shoplift." *Supra* ¶ 34. The disparity in punishment between burglary and retail theft demonstrates the inaccuracy of the majority's claim. As I explain further below (see *infra* ¶ 77), burglary is always at least a Class 2 felony, while a first-time retail thief who shoplifts items valued at less than $300 is charged with a Class A misdemeanor. Under the majority's rationale, the legislature intended for a person who enters a store with the intent to steal $77 worth of clothing to be charged with a felony, while

- 17 -

the person who *actually* steals $77 worth of clothing is charged with a misdemeanor. When construing a statute, we presume that "the legislature did not intend to create absurd, inconvenient or unjust results." *People v. Christopherson*, 231 Ill. 2d 449, 454 (2008). It would be entirely absurd to punish a person's simple entry into a store that is open to the public more severely than a person's act of shoplifting from that store.

¶ 70 My analysis of this case flows logically from our recent *Bradford* decision. There, the defendant was charged with one count of burglary by " 'knowingly and without authority remain[ing]' " within a Walmart with the intent to commit a theft. *Bradford*, 2016 IL 118674, ¶ 4. Accessing areas of the store that were open to the public, the defendant stole a hat, shoes, and a soft drink. He also conducted a fraudulent no-receipt return. *Id.* ¶¶ 6-7. On appeal from his burglary conviction, the defendant argued that the State failed to prove beyond a reasonable doubt that he remained within the store without authority. *Id.* ¶ 9. Underscoring the General Assembly's intent in enacting the retail theft statute, this court agreed with the defendant. *Id.* ¶¶ 25-31. We concluded that the defendant—who entered the store during regular hours, never entered areas of the store that were off-limits to the public, shoplifted several items, and then left while the store was open—did not exceed the scope of his physical authority as a member of the public to be there. *Id.* ¶ 32.

¶ 71 This court held in *Bradford* that burglary by remaining does not apply to ordinary shoplifting. Rather, we indicated that the retail theft statute was the proper mechanism to punish such behavior. See *id.* ¶ 31. The retail theft statute applies to various iterations of stealing from a store. For example, the statute applies to a person who takes possession of merchandise offered for sale in a retail establishment with the intention of depriving the merchant of it without paying the full value of the merchandise. See 720 ILCS 5/16-25(a)(1) (West 2014). It also applies to a person who "[u]nder-rings with the intention of depriving the merchant of the full retail value of the merchandise." *Id.* § 16-25(a)(4). Further, the statute provides that a person who uses or possesses "any theft detection shielding device or theft detection device remover with the intention of using such device" to deprive the merchant of merchandise without paying its full retail value has committed retail theft. *Id.* § 16-25(a)(7). In other words, a person commits retail theft by entering a store in possession of a theft detection shielding device with the intention of using it to steal items.

¶ 72 The majority attempts to distinguish *Bradford*, asserting that "applying the limited authority doctrine in cases of burglary based on unauthorized entry does not create any *** arbitrary distinctions." *Supra* ¶ 26. According to the majority, "it would be rational for the legislature to determine that one who enters a store with a preconceived plan to steal merchandise is more culpable than one" who does so impulsively. *Supra* ¶ 26. This claim overlooks the fact that the retail theft statute already accounts for people who enter a retail establishment with a preconceived plan to steal merchandise. See 720 ILCS 5/16-25(a)(7) (West 2014). Persons who enter a retail establishment with theft-detection-device removers doubtlessly arrive at the store with criminal intent, and the retail theft statute contains a provision to punish such persons.

¶ 73 According to the majority, "[n]othing in *Bradford* prevents application of *Weaver*'s holding to the type of burglary that involves unauthorized entry, even if that entry is with the intent to commit a retail theft." *Supra* ¶ 21. However, in *Bradford*, we found that broadly applying the burglary statute to cases of retail theft could not "be reconciled with the clear

expression of legislative intent in the retail theft statute." 2016 IL 118674, ¶ 28. That sentiment applies to both burglary by entry and burglary by remaining.

¶ 74 Citing *People v. Kelley*, 274 Ill. 556, 558 (1916), and *People v. Brown*, 397 Ill. 529, 530 (1947), the majority argues that for more than 100 years "Illinois case law has recognized that entering a retail store with the intent to commit a theft amounts to the crime of burglary." *Supra* ¶ 16. However, in *Kelley*, this court *reversed* the burglary conviction of a defendant who, similar to the defendant in this case, was charged with "entering a store building *** in the daytime, without force, the doors and windows being open, with the intent to steal *** goods." *Kelley*, 274 Ill. at 557-58. In *Kelley*, we concluded that the "evidence did not justify the conviction of burglary," a ruling that provides little support for the majority's position here. *Id.* at 558. Further, both *Kelley* and *Brown* predate the enactment of the retail theft statute by several decades. When the retail theft statute did not exist, it may have been appropriate for such a thief to be prosecuted under the burglary statute. After passing the retail theft statute, however, the General Assembly clearly did not intend for shoplifters to be charged as burglars. See *Bradford*, 2016 IL 118674, ¶ 28.

¶ 75 Further, "[i]t is presumed that, in enacting new legislation, the legislature acts with full knowledge of previous judicial decisions addressing the subject matter of that legislation." *People v. Jones*, 214 Ill. 2d 187, 199 (2005). The legislature knew that courts had upheld as burglary a defendant's entry into a business building with the intent to commit a theft. See, *e.g.*, *People v. Blair*, 52 Ill. 2d 371, 374 (1972) (affirming burglary convictions of defendants who entered a car wash with the intent to commit a theft); *People v. Reed*, 33 Ill. 2d 535, 537 (1965) (upholding the burglary conviction of a person who " 'without authority, knowingly entered a store building *** with intent to commit therein a "[t]heft" ' "). Yet in 1975, it nonetheless enacted the retail theft statute. The General Assembly would not have created the retail theft statute and passed repeated amendments to it based on suggestions from attorneys and various organizations with the expectation that the State would continue to prosecute shoplifters as burglars.

¶ 76 The debates demonstrate that members of the General Assembly were concerned with castigating retail thieves. See 94th Ill. Gen. Assem., House Proceedings, Mar. 8, 2005, at 12 (statements of Representative Dunkin) (observing that "the real issue[ ] that we have going on in some of our communities *** is that of unemployment, where you have individuals who simply cannot afford to feed their own families"). And the different sentencing ranges for retail theft versus burglary reflect the legislature's determination that retail thieves generally are less culpable than burglars.

¶ 77 For example, as I noted above, the legislature has made a person's first offense of stealing merchandise, "the full retail value of which does not exceed $300," a Class A misdemeanor. 720 ILCS 5/16-25(f)(1) (West 2014). A second such offense is a Class 4 felony. *Id.* By contrast, burglary is at least a Class 2 felony, whether or not it was the first offense. *Id.* § 19-1(b). The General Assembly has specified how different classes of shoplifters should be punished, and the punishments tend to be lower than those for burglars.[4] The legislature would not have

---

[4]Even as to burglary, members of the General Assembly have noted that lengthy prison sentences for minor offenses impose significant costs on Illinois taxpayers. See, *e.g.*, 91st Ill. Gen. Assem., House Proceedings, Apr. 13, 2000, at 45 (statements of Representative Davis) ("We don't want anyone stealing anything, but nor do we want to fill up these prisons with people who have committed minor

- 19 -

invested time and other resources in developing the retail theft statute if it meant for burglary by entry, which was already available before the enactment of the retail theft statute, to be applied to shoplifters.

¶ 78    Highlighting the burglary statute's exception for offenses set out in the Illinois Vehicle Code, the majority notes that "the legislature that enacted the retail theft statute did not also amend the burglary statute to exclude shop-lifting motivated entries into open retail stores." *Supra* ¶ 43 & n.2 (citing 720 ILCS 5/19(a) (West 2014) and 625 ILCS 5/4-102 (West 2014)). The burglary statute has contained an exception for vehicle-related offenses since 1965, and it appears that no similar exceptions have been added after that time. See Ill. Rev. Stat. 1965, ch. 38, ¶ 19-1(a). It is unclear why the General Assembly did not amend the burglary statute to specifically exclude entry into retail stores. But it cannot be the case that the legislature went to the trouble of creating the retail theft statute in 1975 with the intent that persons who shoplift from areas of a store that are open to the public, during regular business hours, would be charged with burglary.

¶ 79    The majority dismisses as an unfounded concern "that allowing an unauthorized-entry burglary conviction when retail theft is involved would effectively negate the retail theft statute." *Supra* ¶ 29. Assuming that it is difficult to prove "a defendant's intent at the moment he or she enters a store," the majority finds it "more probable that the vast majority of suspects will have to be charged only with retail theft." *Supra* ¶ 29. In fact, the State will likely charge suspects with both burglary and retail theft, as it did here and in *People v. Moore*, 2018 IL App (2d) 160277, ¶ 1, a decision the majority relies on. The legislative history behind the retail theft statute demonstrates that the General Assembly intended for the statute to *regulate* shoplifting, not to be used as a fallback in case the jury does not convict the defendant of burglary. And the facts of this case show that proving a defendant's intent upon entry is not hard, as placing a backpack in the store's vestibule was enough.

¶ 80    Although the majority stresses that the defendant's "act of shoplifting *was* prosecuted under the retail theft statute" (emphasis in original) (*supra* ¶ 34), it omits the fact that he was acquitted of retail theft. The jury did not find beyond a reasonable doubt that the defendant stole merchandise from the store, and for the reasons noted above, burglary should not be used as a substitute for prosecuting shoplifters.

¶ 81    In sum, the General Assembly created the retail theft statute to " 'pinpoint a more effective response' " to theft from retail establishments. See *supra* ¶ 36 (quoting 79th Ill. Gen. Assem., Senate Proceedings, May 7, 1975, at 97 (statements of Senator Harris)). Charging a person with burglary for merely entering a store with the intent to steal is antithetical to the General Assembly's goal of pinpointing a targeted response to retail theft. Based on the clear legislative intent for the retail theft statute to govern shoplifting, I would affirm the appellate court's ruling that a person who enters a retail establishment during normal business hours and shoplifts from areas that are open to the public has not committed burglary. I would reverse the defendant's burglary conviction outright. For these reasons, I respectfully dissent.

¶ 82    JUSTICE NEVILLE joins in this dissent.

---

offenses. This is a very expensive way to go.") (debating an amendment to make burglary a lesser-included offense of residential burglary).